UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
VINCENT GODWIN,                             )
         Petitioner,                        )
                                            )
v.                                          )  Civil Action
                                            )  No. 04-11637-RGS
JAMES DIPAOLA,                              )
         Respondent.                        )
_____)

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE PETITION FOR HABEAS CORPUS**

Respondent submits this memorandum of law in opposition to the petition for habeas corpus filed by petitioner Vincent Godwin. The petition should be denied because Mr. Godwin has failed to demonstrate that the state courts' adjudication of his claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

**I.      The State Court Adjudication**

On October 18, 2001, a Middlesex County, Massachusetts, grand jury indicted Petitioner on eleven charges: seven counts of larceny, in violation of M.G.L. c. 266, § 30 ; two counts of check forgery, in violation of M.G.L. c. 267, § 1; and two counts of uttering a forged check, in violation of M.G.L. c. 267, § 5. Supplemental Appendix at Tab E, pp. R7-R17 [hereinafter "Supp. App. at ___:___"]. Defendant was arraigned in superior court on the charges on November 7, 2001, where he was represented by appointed counsel, although Petitioner–an experienced criminal defense lawyer–indicated to the court (Hely, J.) that he was considering representing himself. Arraignment Transcript at pp 4-5 [hereinafter "Arraign. Tr.:___"]. At a pre-trial hearing on November 14, 2001, Petitioner did represent himself, and the court (Hely, J.) determined that Petitioner was not indigent,

and therefore not entitled to appointed counsel. Pre-Trial Conference Transcript [hereinafter "PTC Tr."] at 10-14.

As trial approached, on February 20, 2002, a pretrial status hearing was held at which Petitioner noted his objection to proceeding without counsel. Status Hearing Transcript [hereinafter "Status Tr."] at 16-19. The court (Garsh, J.), confirming that Petitioner had failed to seek review of the indigency determination, found that Petitioner had waived his right to counsel. Status Tr. at 18, 24-25. Petitioner represented himself at trial, which began on February 25, 2002, before Justice Garsh and a jury. The next day, the jury returned verdicts finding Petitioner guilty on the seven larceny counts and acquitting him on the forgery and uttering indictments. Supp. App. at E:R4, R6. On March 21, 2002, Justice Garsh sentenced Petitioner to concurrent eighteen-month sentences of imprisonment in the house of correction on six of the convictions, to be followed by a sentence of two years unsupervised probation on the seventh conviction. Supp. App. at E:R5.

Petitioner timely appealed to the Massachusetts Appeals Court, raising the single issue of whether the court erred in determining that he was not indigent and refusing to appoint him counsel for that reason. Supp. App. at E:1-2. The Appeals Court affirmed the conviction on March 15, 2004. Supp. App. at I:1. Petitioner applied further appellate review in the Massachusetts Supreme Judicial Court, Supp. App. at B; the Court denied the application on May 3, 2004. Supp. App. at C:1. This petition was filed July 22, 2004.

**II.    The Factual Findings**

The factual findings of the state courts are presumptively correct. 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. Dipaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). This presumption of correctness extends

to inferences drawn by the state courts from those factual determinations, *Parke v. Raley*, 506 U.S. 20, 35 (1992), to any factual findings implicit in the state courts' ruling, *Weeks v. Snyder*, 219 F.3d 245, 258 (3d. Cir.), *cert. denied,* 531 U.S. 1003 (2000), and to facts found by both the appellate and trial courts. *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002). The presumptive correctness of state court factual determinations may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### A. The Convictions

The Appeals Court set forth the facts supporting Petitioner's convictions:

On May 25, 2001, a check in the amount of $98,000, drawn on the account of the Madison Area Educational Special Services Unit, was deposited into a checking account the defendant held jointly with his wife at F[ramingham] C[ooperative] B[ank]. The check had not been validly issued by the named maker. On June 4, 2001, the defendant had $70,000 wired from his account to an entity called "K-R, Ltd.," which did its banking in New York; this money was then wired to Nigeria. Over the course of the next eleven days, the defendant withdrew varying amounts -- $10,500, $7,400, and $2,500--from his account. He also wrote a check for $1,200 to a Carol Davis and used a check for $4,000 to obtain a treasurer's check in the same amount for a local jewelry store.

On June 18, 2001, another unauthorized check, this time in the amount of $175,000, drawn from a Spelman College account, was deposited into the defendant's account. Three days later, the defendant had $150,000 wired from his account to "Klen-Riches Limited," and then to Nigeria.

After the payor banks returned the two unauthorized checks to FCB, FCB commenced an investigation and alerted the Framingham police department to the defendant's suspicious banking transactions. During an interview with a police detective investigating the case, the defendant explained that, although he was surprised the money had been deposited into his account via check, he was not surprised that money had been deposited; specifically, he had been expecting a wire transfer. He told the detective that an anonymous "good Samaritan" had come to his aid. The defendant claimed that this Samaritan, whom he refused to name, had pledged assistance in helping him recoup some money he had lost in a Nigerian oil deal gone sour and had told him to expect a wire deposit to his account. Showing

good faith to his unnamed benefactor, the defendant purchased a Rolex watch for $5,000 and sent it to him in Nigeria.

*Commonwealth v. Godwin*, 804 N.E.2d 940, 941-42 (2004); Supp. App. at I:3.

### B. The Indigency Determination

The Appeals Court made the following findings as to the indigency determination:

At his arraignment on November 7, 2001, the defendant's indigency report, which had been completed by the probation department, was submitted to the judge for review. The report disclosed that the defendant was a forty-four year old lawyer who, although currently unemployed, had practiced law in Virginia for the past eleven years. [At the pretrial status hearing, the defendant told the court that for the past nine years he had his own general law practice in Virginia. He stated more than one-half of his practice was devoted to criminal defense work and that over the years he had tried thousands of cases, of which forty to fifty felony trials were before a jury.][1] He reported that he had no income, no assets, no expenses, and was living with his aunt in Fitchburg. At his arraignment, the defendant commented that he had been considering the possibility of representing himself, but had not made a final decision. Upon an examination of the report and a short inquiry of the defendant,[2] the judge indicated that he would "stick with the court-appointed attorney" that had been assigned by the District Court, but indicated that if, after consulting with that attorney the defendant wanted to represent himself, that decision could be discussed at the next hearing.

One week later, at the pretrial conference before the same judge who had arraigned him, the issue of the defendant's indigency was again discussed. On that date, the court-appointed attorney was not present and, through the district attorney, was requesting a continuance of the pretrial conference. The defendant was present and eager that the pretrial conference proceed immediately. The defendant offered to represent himself at the pretrial conference so that it could go forward. At this point, the judge invited the defendant "to tell me anything which you think makes you qualify for indigency." The defendant did not offer any proof or explanation as to why he believed he was indigent. He responded only that "[he knew his] status. And like, being in this situation here, in Massachusetts, and away from my home in Virginia, I don't have anything here. But that doesn't mean that I am not prepared to

---

[1] The bracketed material was set forth in the margin of the original.

[2] When asked by the court if he owned a home, the defendant responded, "No, your Honor. I'm from Virginia." He further indicated that he was not paying rent at his aunt's home and that he had "worked most of this year." (Footnote in the original).

go forward with this domicile." At that point, the judge found that the defendant was not indigent and the case was scheduled for trial.

On February 20, 2002, six days prior to trial, the judge assigned to hear the case (trial judge) conducted a pretrial status hearing to review potential trial issues. During the hearing, the defendant objected to going forward without counsel and to the finding that he was not indigent. The trial judge asked whether he had appealed from the nonindigency determination, to which the defendant responded, "I didn't appeal, I just wanted the objection noted for the record that I just--I don't have anything and--that's all I told the Court." He did not offer any additional information to support his claim of indigency. The trial judge noted that no appeal had been taken from the determination that the defendant was not indigent and declined to disturb the finding of nonindigency. The defendant proceeded to represent himself at trial.

[ . . . .]

Finally, although the judge did not have this information before him when making the initial determination, there is little question the defendant had funds available to him. Prior to his arrest, he wrote a check to himself, on June 4, 2001, in the amount of $10,500, and promptly cashed it. He did the same with checks for $7,400, on June 5, 2001, and $2,500, on June 12, 2001. On June 9, 2001, the defendant also wrote a check in the amount of $1,200 to a Carol Davis, who cashed the check. The defendant obtained a treasurer's check on June 13, 2001, in the amount of $4,000, using money from his checking account, and payable to a local jewelry store. [Interestingly, the watch the defendant purchased at the jewelry store cost $5,000. The treasurer's check, as we have stated, was in the amount of $4,000, inferably leaving the defendant to pay the remaining $1,000.][3] (On June 4, 2001, the defendant also wired $70,000 to K-R Ltd., using funds from the checking account.) [Shortly before the defendant's arrest, an additional withdrawal of $250 was made on the account. The day of the defendant's arrest, two more withdrawals of $300 and $500 were made. Four days later, a final withdrawal of $124.26 was made, and the account was closed.][4] The defendant indicated that he was not paying rent at his aunt's home and that he had "worked most of this year."

*Id*. at 942-43, 946; Supp. App. at I:4-5, 8.

---

[3]The bracketed material was set forth in the margin of the original.

[4]The bracketed material was set forth in the margin of the original.

**III.   The Appeals Court's Decision Was Neither Contrary to nor an Unreasonable Application of Clearly Established Federal Law, as Determined by the United States Supreme Court and Did Not Rest on an Unreasonable Determination of the Facts in Light of the State Court Record.**

Petitioner has refiled his Appeals Court brief as his memorandum of law, repeating his single Appeals Court claim that the trial court erroneously determined that he was not indigent and erred in denying him appointed counsel based upon that determination. The Appeals Court considered this claim at length and rejected it:

> An indigent defendant is entitled to court-appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). "This right is protected by the Sixth Amendment to the United States Constitution (see *Argersinger v. Hamlin,* 407 U.S. 25 ), by art. 12 of the Declaration of Rights of the Massachusetts Constitution, and by S.J.C. Rule 3:10, as amended, 399 Mass. 1207 (1987)." *Commonwealth v. Babb*, 416 Mass. 732, 735, 625 N.E.2d 544 (1994). The deprivation of the right to counsel results in automatic reversal of a conviction, without determination whether the defendant was prejudiced by the deprivation. It is "[a] structural error ... that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless." *Commonwealth v. Villanueva*, 47 Mass.App.Ct. 905, 906, 711 N.E.2d 608 (1999). See *Commonwealth v. Curtis,* 417 Mass. 619, 635-636, 632 N.E.2d 821 (1994).
>
> Indigence is determined through the confluence of Mass.R.Crim.P. 8, as amended, 397 Mass. 1226 (1986) (which directs the District and Superior Courts to follow the procedures for assignment of counsel established in G.L. c. 211D), and S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993). See Mass.R.Crim.P. 33, as amended, 397 Mass. 1227 (1986). Rule 3:10, § 4(a), in pertinent part, defines an indigent party as one who is "receiving an annual income, after taxes, 125% or less of the current poverty threshold referred to in G.L. c. 261, § 27A." A judge may avoid a strict application of the definitions in rule 3:10, § 4(a), "based on a consideration of the party's available funds in relation to the party's basic living costs or based on special circumstances, or both, provided that the judge sets forth in findings on the record the reasons for doing so." S.J.C. Rule 3:10, § 4(b). Cf. G.L. c. 261 § 27C(3).
>
> Usually the determination of indigency is relatively simple, and a defendant who comes within the definition is routinely provided counsel. There are occasions, however, where the evidence is murky, and the determination neither straightforward nor obvious. Although the applicable rules do not assign the burden of proof in controversies surrounding a defendant's indigency, we hold that the burden is on a

defendant to show that his financial situation prevents him from securing counsel.

In *Adoption of Holly*, 432 Mass. 680, 688, 738 N.E.2d 1115 (2000), the Supreme Judicial Court held, in interpreting G.L. c. 119, § 29, that it was "obvious from [the] statutory language that a parent must first demonstrate indigency before counsel is appointed." See *Adoption of Olivia*, 53 Mass.App.Ct. 670, 673-675 & nn.3-4, 761 N.E.2d 536 (2002). Significantly, the statutory language considered by the court in *Holly* was no more specific in assigning the burden than is the language in rule 3:10 pertaining to a criminal defendant.

Moreover, a line of Federal cases is in accord with placing the burden of proof of indigency on the defendant. See *United States v. Harris*, 707 F.2d 653, 660 (2d Cir.), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983) ("the weight of authority is that the burden [to prove indigency] rests with the defendant"); *United States v. Santiago-Fraticelli,* 818 F.Supp. 27, 29-30 (D.P.R.1993) ("a line of circuit cases beginning with *United States v. Harris* ... has clearly put the burden of proof on defendants to show that their financial situation prevents them from securing adequate counsel"); *United States v. Salemme,* 985 F.Supp. 197, 201 (D.Mass.1997).

Finally, our conclusion is buttressed by the simple logic that it is the defendant who is most knowledgeable of his own financial status. To place the burden on the Commonwealth would promote inefficiency and could open the door to evasiveness and manipulation of the court-appointment system by nonindigent defendants.

During a hearing on indigency, a judge is warranted, as in any hearing where evidence or information is presented, to make credibility determinations. See, e.g., *Commonwealth v. Costa,* 414 Mass. 618, 626, 609 N.E.2d 465 (1993) (determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw the witness). Consequently, a judge need not credit a defendant's unsupported claim of indigency. Before the limited funds of the Commonwealth are expended, the defendant should be required to say more than, in essence, "I'm broke, I need an attorney." While a judge may accept such an unadorned statement, judges are encouraged to require that a defendant substantiate his assertion in some meaningful fashion.

*The present case.* Here, the defendant argues that he was unjustifiably deprived of his constitutional right to counsel when the trial court found he was not indigent. We do not agree. The judge's determination is supported by the record for the following reasons. The defendant's indigency report filed with the probation department lacks credibility. Although the judge who initially denied the defendant court-appointed counsel did not specifically make findings on the issue of the defendant's credibility, we can infer that he found the defendant not to be credible. See, e.g., *Commonwealth v. Myers,* 16 Mass.App.Ct. 554, 555, 452 N.E.2d 1170 (1983). The defendant's

7

assertion that he had been an attorney for the past eleven years and had "worked most of this year," yet did not have a single cent nor any assets to his name strains credulity. His sudden indigency is further questionable in that he reported having three dependents yet failed to itemize a single expense associated with supporting them. His failure to claim expenses for such basic necessities as food or transportation indicates the cavalier and disingenuous manner in which he supplied information for this document. Moreover, although the defendant asserted he was not employed and had no assets, his wife was employed (though the defendant and his wife were living separately), and the defendant had held the checking account jointly with his wife. We do not suggest all of the marital funds should have been appropriated to pay for the defendant's attorney, but the defendant's failure to shed any light on the disappearance of such funds is further evidence of his lack of candor before the court.

We note the defendant's training as a lawyer provided him with the ability to understand the proceedings, their implications, and the specific questions posed to him. Despite this background, the defendant failed to answer directly many of the judges' questions posed over the course of three hearings and failed adequately to fill out the indigency form. Where the burden of demonstrating indigency falls on the defendant, as we hold it does, a defendant may properly be required to do more than supply inaccurate and misleading information for a form he knows will be used to determine his right to court-appointed counsel. The same requirement applies with respect to a defendant's statements to a judge. While the judges here should have made further inquiries of the defendant and articulated their findings, S.J.C. Rule 3:10(4)(b), the failure to have done so does not prohibit our evaluation of the record.

The defendant's failure to seek reconsideration of the determination that he was not indigent bolsters our conclusion the judge properly denied appointed counsel. See S.J.C. Rule 3:10(7)(b) ("A party has the right to reconsideration in a formal hearing"). Here, the trial judge asked the defendant if he had appealed the court's finding that he was not indigent. The defendant responded that he had not appealed and merely wanted the objection noted for the record. Had the defendant been truly aggrieved by the failure to appoint counsel or by the determination that he was not indigent, he had the opportunity to seek reconsideration of this ruling. Such further consideration would have given the defendant an additional opportunity to present whatever documentary evidence or testimony (e.g., from his wife or aunt) may have supported his claim. See also S.J.C. Rule 7(a).

Finally, although the judge did not have this information before him when making the initial determination, there is little question the defendant had funds available to him. Prior to his arrest, he wrote a check to himself, on June 4, 2001, in the amount of $10,500, and promptly cashed it. He did the same with checks for $7,400, on June 5, 2001, and $2,500, on June 12, 2001. On June 9, 2001, the defendant also wrote

8

> a check in the amount of $1,200 to a Carol Davis, who cashed the check. The defendant obtained a treasurer's check on June 13, 2001, in the amount of $4,000, using money from his checking account, and payable to a local jewelry store. (On June 4, 2001, the defendant also wired $70,000 to K-R Ltd., using funds from the checking account.) The defendant indicated that he was not paying rent at his aunt's home and that he had "worked most of this year."
>
> The defendant did not meet his burden of demonstrating that he was indigent. In view of all the circumstances presented in this case, the record supports the judge's ruling that the defendant was not entitled to court-appointed counsel. See *Commonwealth v. Delorey,* 369 Mass. 323, 330, 339 N.E.2d 746 (1975) ("We do not substitute our judgment for that of the trial judge on the factual issue whether the defendant was able to pay for counsel").

*Id*. at 944-47; Supp. App. at I:5-9.

The deference accorded state court determinations on federal collateral review precludes habeas corpus relief here.

### A.     *Standard of Review*

Habeas corpus review of claims previously adjudicated by state courts is both limited and highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility"

for evaluating federal law claims raised in criminal trial in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti,* 537 U.S. 19, 26-27 (2002) (per curiam). Thus, as the Supreme Court has repeatedly emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was erroneous or incorrect. *Id.* at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not even sufficient that the state court "failed to apply" Federal law clearly established by the Supreme Court, *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam), or that the state court committed "clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling was erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Rather, federal courts must decline to intervene to disturb state court judgments unless Petitioner demonstrates that his claim falls into one of the narrowly drawn categories set forth in the statute. "Under § 2254(d)(1), the writ may only issue if one of . . . two conditions is met . . . ." *Williams*, 529 U.S. at 412. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently from [the Supreme] Court on a set of materially distinguishable facts. *Id.* at 412-13. The analysis under the "unreasonable application" clause is distinct, and relief is available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. To be entitled to relief under the latter clause, the burden is on Petitioner to show that the state court decision applied the clearly established law in an "objectively unreasonable manner." *Id.* at 409-410. Since, "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general rule, the more leeway courts have

in reaching outcomes in case by case determinations." *Yarborough v. Alvorado*, 124 S.Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id.* at 2147; *Williams*, 529 U.S. at 412.

Factual determinations of state courts are granted similar deference. Review of the reasonableness of state court factual determinations under § 2254(d)(2) is limited exclusively to determinations of basic, primary, or historical facts, while inferences, characterizations of the facts, or mixed questions of fact and law are not reviewable under subsection (d)(2). *Trigones v. Bissonnette*, 296 F.3d 1, 6 n.4 (1st Cir. 2002); *Dolinger v. Hall*, 302 F.3d 6, 8 n.5 (1st Cir. 2002). To satisfy § 2254(d)(2), moreover, a petitioner must show that the state's factual determination was objectively unreasonable. *Miller-El v. Cockrell*, 53 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Objective unreasonableness is not merely an incorrect or erroneous decision. *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-704 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error.") *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Sanna v. DiPaolo*, 265 F.3d 1, 7. *See also Miller-El,* 537 U.S. at 341

11

(noting that to prevail under § 2254(d)(2), a habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

Surpassing even the substantial deference habeas courts pay state court determinations of federal questions, is that accorded decisions regarding state law, which are completely unreviewable in habeas corpus, as the Supreme Court has repeatedly held:

> We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### B. The Decision of the State Court Rests on Adequate and Independent State Law Grounds.

Petitioner's memorandum does not specifically identify what aspects of his claim are founded on Federal law, as opposed to Massachusetts rule, statute and state constitutional law (an omission that is unsurprising, since Petitioner relies on his state court briefs here). The principal basis for the Appeals Court's holding--that the burden was on Petitioner to prove that he was indigent--is a matter of state law. To the extent that Petitioner intends to argue here that the court's decision on this point was erroneous under state law principles, that claim is not reviewable in habeas corpus. *Id*. In addition, as the trial court and the Appeals Court found, Petitioner failed to pursue the opportunity given to him under state law to contest the finding that he was not indigent. Procedural default is an adequate and independent state law ground barring relief, and Petitioner suggests neither cause excusing his failure to seek review of the indigency determination before trial, nor any evidence that

the result of such a review would have produced a different result. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (procedurally defaulted claims may not be asserted in habeas corpus unless Petitioner can show cause for the default, and resulting prejudice).

      ***C.    Placing the Burden of Proof of Indigency on Petitioner Was Not Contrary to or an Unreasonable Application of* Gideon.**

As described fully *supra*, at p. 6., the Appeals Court recognized and affirmed the right of indigent criminal defendants to have appointed counsel provided to them by the State, law established by the Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335 (1963). Supp. App. at I:5. Petitioner does not suggest, however, that *Gideon* or any other Supreme Court case clearly establishes that the burden of proving indigency may not be placed on the criminal defendant. To the contrary, as the Appeals Court recognized, long-standing federal authority and practice suggest that placing the burden of proof on this issue on the defendant is not just permissible, but proper. *See, e.g., United States v. Harris*, 707 F.2d 653, 660 (2d Cir.), *cert. denied*, 464 U.S. 997 (1983). Petitioner nowhere suggests that this allocation of the burden of proof was erroneous, much less that the decision was contrary to, or an unreasonable application of, *Gideon* or any other Supreme Court precedent.

      ***D.    Petitioner Has Not Shown That the Appeals Court's Decision Rested on an Unreasonable Determination of Facts, in Light of the State Court Record.***

Nor has Petitioner demonstrated that the Massachusetts courts' determination that he failed to prove that he was indigent was objectively unreasonable, in light of the almost complete lack of specific, verifiable evidence of his financial condition Petitioner offered to the State courts. As the Appeals Court described, the only evidence Petitioner presented to the trial court in support of his indigency claim was his bald, undocumented assertion that he had no income or assets. As the

Appeals Court noted, the trial court was free to disbelieve this blanket representation, since it failed to explain how Petitioner had worked as an attorney for eleven years but had not a single penny to his name (despite apparent access he had to a joint checking account with his wife). Moreover, as the Appeals Court noted, the fact that Petitioner failed to itemize any expenses at all suggested that he was not undertaking to provide the court with an accurate account of his finances. Finally, Petitioner has offered nothing to overcome the Appeals Court's finding that Petitioner did have access to substantial funds immediately before arrest–writing himself checks for more than $ 20,000. Supp. App. at I:8. In short, there was ample record support for the state courts' factual determination that Petitioner had failed to prove his indigence. Petitioner has failed to show that that determination was arrived at in an objectively unreasonable manner, and has come forward with nothing approaching clear and convincing evidence to overcome presumption that he was, as a factual matter, not indigent.

## CONCLUSION

For these reasons, the petition should be denied.

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ David M. Lieber
David M. Lieber (BBO # 653841)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200 ext. 2827

Dated: May 6, 2005