UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-CV11637-RGS

VINCENT GODWIN,
Petitioner

V.

JAMES DiPAOLA,
Respondent

**REPORT AND RECOMMENDATION ON**

**THE PETITION FOR A WRIT OF HABEAS CORPUS**
**(DOCKET # 2)**

ALEXANDER, M.J.

On February 25, 2002, a Middlesex County Superior Court jury found the petitioner, Vincent Godwin, guilty of seven counts of larceny. The jury acquitted him of two counts of forgery and two counts of uttering. The Massachusetts Appeals Court affirmed the conviction and the Supreme Judicial Court of Massachusetts ("SJC") denied his petition for further appellate review. Mr. Godwin thereafter filed his petition for a writ of habeas corpus, on July 22, 2004. The District Court (Stearns, J.) referred the matter to this Court for a Report and Recommendation on the disposition of the petition.

Mr. Godwin, acting *pro se*, makes only one claim in his petition: that the trial court wrongly determined that he was not indigent, depriving him of his right to court-appointed counsel under the Sixth and Fourteenth Amendments. For the reasons set forth more fully below, this Court RECOMMENDS that the petition for a writ of habeas corpus be DENIED.

**Factual and Procedural History**

The facts of this case are set forth in sufficient detail in the opinion of the Massachusetts Appeals Court. See Commonwealth v. Godwin, 60 Mass. App. Ct. 605, 804 N.E.2d 940 (2004). It suffices to recount the facts as the Appeals Court found them and as they appear in the record before this Court. Those renditions are presumed to be correct for the purpose of this petition. 28 U.S.C. § 2254(e)(1); Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).

On May 25, 2001, an invalid check was drawn on the account of the Madison Area Educational Special Services Unit in the amount of $98,000 and deposited into a checking account jointly held by the petitioner and his wife at the Framingham Cooperative Bank ("FCB"). Godwin, 60 Mass. App. Ct. at 606. On June 4, 2001, the petitioner ordered $70,000 to be wired from the FCB account to an entity named "K-R, Ltd." This entity then wired the same amount to Nigeria. Id. The petitioner made three other withdrawals from his account over the next

week and a half in the amounts of $10,500, $7,400, and $2,500, and also wrote a check for $1,200 to a Carol Davis. Id. Additionally, the petitioner obtained a treasurer's check using $4,000 from his FCB account for payment to a local jewelry store. Id.

On June 18, 2001, a second invalid check, in the amount of $175,000, was drawn from a Spelman College account and deposited into the petitioner's FCB account. Id. Three days later, $150,000, was transferred to "Klen-Riches Limited," at petitioner's request, and then to Nigeria. Id.

Both payor banks for the deposited checks returned the checks to FCB, leading FCB to commence an investigation that the Framingham Police Department joined. Id. During the police investigation, the petitioner expressed that he was not surprised that the money had been deposited; he was, however, surprised that the money had been deposited via check rather than wire transfer. Id. at 606-07. The petitioner claimed that a "good Samaritan," whom he refused to name, had come to his aid by helping him recoup money lost in a Nigerian oil deal. Id. at 607. The petitioner claimed that this person told him to expect a wire transfer. Id. He also claimed that he purchased a Rolex watch for $5,000 at a local jewelry store and sent it to the "good Samaritan" in Nigeria. Id.

The petitioner was indicted in October 2001. Id. at 606. At his arraignment, his indigency report, which had been completed by the probation department, was submitted to the judge for review. Id. at 607. The report indicated that the petitioner was a forty-four year-old lawyer who had practiced law in Virginia for eleven years and was currently unemployed. Id. The report also indicated that the petitioner had no income, assets, or expenses and that he was living with an aunt in Fitchburg. Id. At the arraignment, the petitioner said that he was considering representing himself but had not yet made a final decision. Id. The judge examined the report, made some inquiries, and decided to "stick with the court-appointed attorney" who had been assigned by the state District Court. Id. The judge mentioned that if the petitioner decided to represent himself after consulting with his attorney, the matter could be discussed further at the next hearing. Id.

At the pretrial conference, held one week later, the petitioner's indigency was again discussed. Id. The court-appointed attorney was not present at the conference, but had requested a continuance. Id. The petitioner was eager to proceed, and offered to represent himself at the pretrial conference. Id. at 607-08. The judge asked the petitioner "to tell me anything which you think makes you qualify for indigency." Id. at 608. No proof or explanation was offered by the

4

petitioner other than his stating that "[he knew his] status. And like, being in this situation here, in Massachusetts, and away from my home in Virginia, I don't have anything here. But that doesn't mean that I am not prepared to go forward with this domicile." Id. The judge then made the determination that the petitioner was not indigent and the case was scheduled for trial. Id.

On February 20, 2002, a pretrial status hearing was held. Id. The trial judge noted that a colloquy had yet to be conducted with regards to the petitioner's *pro se* defense. Id. At that point, the petitioner objected to going forward without counsel and objected to the previous finding that he was not indigent. Id. The judge questioned whether the petitioner had appealed the determination. Id. The petitioner responded, "I didn't appeal, I just wanted the objection noted for the record that I just–I don't have anything and–that's all I told the Court." Id. He offered no further proof of his indigency status at that time, and the judge did not overrule the finding that the petitioner was not indigent. Id.

The petitioner proceeded to represent himself at trial and was convicted of seven counts of larceny. Id. at 606, 608. He appealed his conviction on the sole basis that the trial court wrongly determined that he was not indigent, depriving him of his right to counsel.[1] Id. The Appeals Court affirmed the conviction,

---

[1] The petitioner was appointed counsel to assist him on appeal.

5

largely on the basis that the burden of proof to establish indigency under Massachusetts state law rested with the petitioner and that the petitioner had failed to show that he was indigent. Id. at 609-14. The SJC thereafter denied the petitioner's application for further appellate review. Commonwealth v. Godwin, 441 Mass. 1107, 807 N.E.2d 830 (2004).

The petitioner then filed his petition for a writ of habeas corpus, claiming that the trial court's decision wrongly deprived him of his right to court-appointed counsel under the Massachusetts Declaration of Rights as well as the Sixth and Fourteenth Amendments. The government asserts that the petition should be denied because the petitioner has failed to establish that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

## ANALYSIS

### Federal Habeas Corpus Standard

The scope of this Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996). Lindh v. Murphy, 521 U.S. 320 (1997). The AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ

of habeas corpus with respect to grounds adjudicated in state court." Williams v. Taylor, 529 U.S. 362, 364 (2000). The role of this Court is not to act as another level of appeal in the state system. "The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden variety errors, whether of fact or law, that may stain the record of a state criminal trial." Burks v. Dubois, 55 F.3d 712, 715 (1st Cir. 1995).

Pursuant to the AEDPA, a state prisoner can prevail on a petition for a writ of habeas corpus only if the state court's decision was "contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Tyler v. Cain, 533 U.S. 656, 660 (2001). In response to the statutory language of the AEDPA, the First Circuit clarified the dichotomous standard: "the first category embraces cases in which a state court decision directly contravenes Supreme Court precedent, and the second embraces cases in which a state court decision, although not 'contrary to' relevant Supreme Court precedent, nonetheless constitutes an 'unreasonable application' of relevant Supreme Court precedent." O'Brien v. DuBois, 145 F.3d 16, 24 (1st Cir. 1998). See also Taylor, 529 U.S. at 404-05 (O'Connor, J., concurring) (explaining that the AEDPA's "contrary to" and "unreasonable application" prongs have independent meaning). Furthermore, the AEDPA does

not require the state courts to cite or even be aware of Supreme Court precedent, as long as "neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). See also Downs v. Spencer, 238 F. Supp. 2d 332, 336-37 (D. Mass. 2003) (Young, C.J.) (commenting that a state court's failure to directly cite the controlling Supreme Court precedent is "entirely irrelevant").

In petitions based upon the "contrary to" prong of the habeas statute, a state court decision is contrary to clearly established precedent if the state court applied a rule that contradicts the governing law set forth by the Supreme Court of the United States, or confronts facts that are materially indistinguishable from a Court decision and nevertheless arrives at a different result. Lockyear v. Andrade, 538 U.S. 63, 73 (2003). The Court in Taylor defined the word "contrary" to be commonly understood to mean "'diametrically different,' 'opposite in character or nature,' or mutually opposed.'" 529 U.S. at 405.

A federal court may also grant relief based the "unreasonable application" prong of the habeas statute when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." Lockyear, 538 U.S. at 75. In order for a federal court to find a state court's application of Supreme Court precedent "unreasonable," the state

court's decision must have been more than incorrect or erroneous – it must have been "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Taylor, 529 U.S. at 409. Commenting on various federal court's readings of the "unreasonable application" component, the First Circuit in McCambridge v. Hall expounded that some increment of incorrectness beyond error is required to denote a unreasonable application of governing legal principle. McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). "The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id.

With these principles in mind, the Court turns to the claim made by the petitioner.

**Decision of the State Court that Petitioner Was Not Indigent**

Clearly established federal law indicates that an indigent defendant in a criminal proceeding has the right to court-appointed counsel. Gideon v. Wainwright, 372 U.S. 335 (1963). The denial of court-appointed counsel to an indigent defendant would, therefore, constitute a violation of that defendant's rights. Although the petitioner in the instant case does assert that he was wrongly denied counsel, his contention is not that he was determined indigent and then denied counsel, but that he was not determined indigent in the first place. In order

to succeed on his habeas petition, therefore, the petitioner must show that the determination that he was not indigent was itself "contrary to" or an "unreasonable application of" some clearly established federal law.

The state court decision regarding the petitioner's indigency, however, was based not on federal law, but, rather on state law. The Appeal's Court noted that

> [i]ndigence is determined through the confluence of Mass.R.Crim.P. 8, as amended, 397 Mass. 1226 (1986) (which directs the District and Superior Courts to follow the procedures for assignment of counsel established in G.L. c. 211D), and S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993). See Mass.R.Crim.P. 33, as amended, 397 Mass. 1227 (1986).

Godwin, 60 Mass. App. Ct. at 609, 804 N.E.2d at 943-44 (footnote omitted). The Appeals Court then held that the defendant bears the burden of establishing indigency and the right to court-appointed counsel. The petitioner did not meet this burden.

The Appeals Court does, in holding that the burden to establish indigency rests with a defendant, point to a line of federal appeals court cases with similar holdings. See United States v. Harris, 707 F.2d 653, 660-62 (2d. Cir.), cert. denied, 464 U.S. 997 (1983) (holding that where doubt existed as to the defendant's finances based on his inability to accurately explain how he had spent his past earnings, the court had not abused its discretion in determining he was not

indigent); United States v. Santiago-Fraticelli, 818 F. Supp. 27, 29-30 (D.P.R. 1993) (holding that where there existed a "clash of facts", unexplained gambling transactions, the possible ownership of a home and a history indicating a lack of credibility, the court did not violate the Sixth Amendment by finding that the defendant had not met his burden of proof as to his indigency); United States v. Salemme, 985 F. Supp. 197, 201 (D. Mass. 1997) (citing Harris and permitting the defendants to submit *ex parte* affidavits regarding financial status in order to meet burden of proof required to establish indigency without prejudicing case). These cases do not, however, constitute "clearly established federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), and would not provide a basis for any assertions by the petitioner regarding the placement of the burden to establish indigency or the application of that law to the petitioner.

The petitioner supports his habeas petition with the brief that he filed with the Massachusetts Appeals Court. That brief presents no assertions whatsoever that the state court's determination that he was not indigent was "contrary to" or an "unreasonable application of" clearly established federal law. This Court may not consider state law questions in habeas petitions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

## Conclusion

For the foregoing reasons, this Court RECOMMENDS that the District Court DENY the petition for a writ of habeas corpus.

SO ORDERED.

_6/16/05_
Date

Joyce London Alexander
United States Magistrate Judge